**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| IN RE: WIRE HARNESSES IN RE: OCCUPANT SAFETY SYSTEMS | Case No. 2:14-cv-14451-MOB-MKM Case No. 2:14-cv-00107-MOB-MKM Case No. 2:15-cv-12050-MOB-MKM Case No. 2:15-cv-00607-MOB-MKM |
| THIS DOCUMENT RELATES TO TRUCK AND EQUIPMENT DEALER CASES | |

**TRUCK AND EQUIPMENT DEALER PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS WITH CERTAIN DEFENDANTS AND FOR
CERTIFICATION OF THE SETTLEMENT CLASSES**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Truck and Equipment Dealer Plaintiffs ("TED Plaintiffs") respectfully move the Court for final approval of the settlements between the Truck and Equipment Dealers and certain Defendants, which the Court previously conditionally approved in the above matters, and for certification, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), for settlement purposes only, of the settlement classes.

In support of this Motion, TED Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law, oral argument, and the Declarations of J. Manly Parks and Tina Chiango.

Respectfully submitted,

Dated:  November 10, 2016

/s/ J. Manly Parks
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Andrew R. Sperl (PA Bar #311467)
William Shotzbarger (PA Bar #320490)
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com
wshotzbarger@duanemorris.com

*Interim Class Counsel for Truck and*
*Equipment Dealer Plaintiffs*

DM1\7333696.2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| IN RE:  WIRE HARNESSES IN RE:  OCCUPANT SAFETY SYSTEMS | Case No. 2:14-cv-14451-MOB-MKM Case No. 2:14-cv-00107-MOB-MKM Case No. 2:15-cv-12050-MOB-MKM Case No. 2:15-cv-00607-MOB-MKM |
| THIS DOCUMENT RELATES TO TRUCK AND EQUIPMENT DEALER CASES | |

MEMORANDUM OF LAW IN SUPPORT OF
TRUCK AND EQUIPMENT DEALER PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS WITH CERTAIN DEFENDANTS AND FOR
CERTIFICATION OF THE SETTLEMENT CLASSES

DM1\7333696.2

## STATEMENT OF ISSUES PRESENTED

1. Whether settlements between the Truck and Equipment Dealer Plaintiffs and certain Defendants are fair, reasonable, and adequate and should be granted final approval under Fed. R. Civ. P. 23?

      **Suggested Answer:   Yes.**

2. Whether the Court should grant final certification to the Truck and Equipment Dealer settlement classes it previously conditionally certified??

      **Suggested Answer:   Yes.**

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- Fed. R. Civ. P. 23

- *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

- *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

- *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

DM1\7333696.2

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................1

**BACKGROUND** ................................................................................................2

**I.     THE SETTLEMENTS PROVIDE SUBSTANTIAL BENEFITS TO TED
         PLAINTIFFS**..........................................................................................2

**II.    THE NOTICE PLAN WAS CARRIED OUT AND PROVIDED
         ADEQUATE NOTICE OF THE SETTLEMENTS.** ................................4

**III.   THE REACTION OF SETTLEMENT CLASS MEMBERS WAS
         POSITIVE.** .............................................................................................5

**LEGAL STANDARD** ........................................................................................5

**ARGUMENT** .....................................................................................................7

**I.     THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE
         AND SHOULD BE GIVEN FINAL APPROVAL.**...................................7

**II.    NOTICE OF THE SETTLEMENTS WAS PROPER UNDER RULE 23
         AND MET DUE PROCESS REQUIREMENTS.**.....................................13

**III.   CERTIFICATION OF SETTLEMENT CLASSES IS APPROPRIATE.** .................15

**CONCLUSION** .................................................................................................21

iii

# <u>TABLE OF AUTHORITIES</u>

## Federal Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................15, 19

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336 (E.D. Pa. 2007) ....................................................................................................................................10

*In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ..................................................................................7

*Beanie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................................19

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) ......................20

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................*Passim*

*Carlough v. Amchem Prods.*, 158 F.R.D. 314 (E.D. Pa. 1993) ....................................14

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ...........................................................7

*Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) ..............................................................................................................11, 16-17

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................................................................................10

*Dick v. Spring Commc'ns*, 297 F.R.D. 283 (W.D. Ky. 2014) ..................................6, 10

*In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992) ..............14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................14

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ..........................................................................16

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ...........................................................14

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ........................16-17

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012) ...................................20

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ..............................................................6

*Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ..............................8

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....................................................................................................*Passim*

iv

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)..................................................14

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) .........................................19

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ............. 7-8, 13, 15

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) .......................................7

*Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007 (E.D. Mich. 2005) .......................................6

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007)..............................................16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..............................................14

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y 1996).......................20

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627 (W.D. Ky. 2006)..........................................................................................7

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010).....................................................................................................6, 11

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)..............................................................................................*Passim*

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992).......................................13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)...........................14

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)..................................................19

*Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ..................................................................................*Passim*

*In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) ....................................................................................................................19

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................................16

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990)........................................................12

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .....................................................7

*Taifa v. Bayh*, 846 F. Supp. 723 (N.D. Ind. 1994).....................................................................12

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982)..................................12

*In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ...........................6, 10

*Thacker v. Chesapeake Appalachia*, LLC, 259 F.R.D. 262 (E.D. Ky. 2009)..............................15

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ........................................5-6, 8, 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)................................................................................................ 16-17

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................*Passim*

**Non-Periodical Publications**

Manual for Complex Litigation (Fourth ed.) (2004) ...........................................................14

DM1\7333696.2

## INTRODUCTION

This multidistrict litigation arises from a conspiracy to fix the prices of vehicle parts. Vehicle Wire Harness Systems and Occupant Safety Restraint Systems are among the vehicle parts at issue in these coordinated proceedings, *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 ("MDL Proceeding").

TED Plaintiffs respectfully seek final approval of nine provisionally approved settlements with certain of the Defendants in this MDL Proceeding. These settlements are meaningful and substantial and provide over $5 million in cash benefits. The settlements also provide additional value to the TED Plaintiffs because it requires Settling Defendants to provide comprehensive cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in this case as well as in other cases brought by TED Plaintiffs in the MDL Proceeding. Each of the proposed settlements is fair, reasonable, and adequate and should be granted final approval.

The settlements provide excellent benefits in light of the conduct, damage, litigation risks, and substantial cooperation provided by each of the settling Defendants. The cash components of the settlements reflect compromises that take into account the liability claims and the volume of commerce believed to be affected by the particular settling Defendant's conduct. The settlements also reflect the value provided by a Defendant's decision to settle relatively early in the litigation and provide cooperation that benefits TED Plaintiffs' claims against the non-settling Defendant(s).

Notice of these settlements, as required by Rule 23, was provided through the notice plan previously approved by the Court. The response from the members of the settlement classes was overwhelmingly positive. There were no objections to the settlements, attorneys' fees, litigation

expenses, or class representative service awards. There were no opt-outs. The favorable reception of these settlements provides good evidence that the settlements should be granted final approval.

The Court should also certify, for settlement purposes, the settlement classes that it previously conditionally certified in its preliminary approval orders. The settlements meet the Rule 23 requirements for settlement classes and should be granted certification. In doing so, the Court should confirm the appointment of settlement counsel and the class representatives for the Truck and Equipment Dealers class.

## **BACKGROUND**

### I. **THE SETTLEMENTS PROVIDE SUBSTANTIAL BENEFITS TO TED PLAINTIFFS**

#### A. **Cash Benefits.**

In two prior orders, the Court preliminarily approved settlements (the "Settlements") between the Truck and Equipment Dealers and a number of the Defendants and their affiliates (the "Settling Defendants.") Those Settlements are now before the Court for final approval. The Settling Defendants are: Sumitomo Electric Industries, Ltd. ("SEI"), Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.), Sumitomo Wiring Systems (U.S.A.) Inc. (collectively "Sumitomo"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech"); DENSO Corporation and DENSO International America, Inc. ("DENSO"), Defendants Tokai Rika Co., Ltd. and TRAM, Inc., d/b/a Tokai Rika U.S.A. Inc. ("Tokai Rika"), Defendants LEONI Wiring Systems, Inc. and Leonische Holding Inc. ("LEONI"), Defendants Furukawa Electric Co., Ltd. and American Furukawa, Inc. ("Furukawa"), Defendants Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co.

DM1\7333696.2

KG, and Autoliv Japan Ltd. ("Autoliv"), and Defendants ZF TRW Automotive Holdings Corp.

(formerly known as "TRW Automotive Holdings Corp.") and TRW Deutschland Holding GmbH

("TRW").

   The Settlements involve Wire Harnesses and Occupant Safety Systems, two of the

component parts that the TED Plaintiffs contend were the subject of coordination, bid-rigging,

and price-fixing.  For the Settlements currently before the Court, the Settling Defendants, and the

settlement amounts are:

| Vehicle Parts Case | Settling Defendant | Settlement Amount |
|---|---|---|
| *Wire Harness Systems* | DENSO | $625,000 |
| *Wire Harness Systems* | Furukawa | $1,600,000 |
| *Wire Harness Systems* | LEONI | $150,000 |
| *Wire Harness Systems* | Tokai Rika | $72,500 |
| *Wire Harness Systems* | Yazaki | $1,500,000 |
| *Wire Harness Systems* | Sumitomo | $390,000 |
| *Wire Harness Systems* | G.S. Electech | $475,000 |
| *Occupant Safety Systems* | Autoliv | $195,000 |
| *Occupant Safety Systems* | TRW | $165,000 |

(*See* Orders approving settlements between Truck and Equipment Dealers and Sumitomo,

Yazaki, and G.S. Electech [Case No. 2:14-cv-14451, ECF No. 119] (Sept. 15, 2016); and

DENSO, Tokai Rika, LEONI, Furukawa, Autoliv, and TRW [Case No. 2:15-12050, ECF No.

18] (Oct. 7, 2016)).

   Because of the different parts involved, there are essentially two different settlement

classes in the Settlements (the "Settlement Classes").  (*Id.*)  As part of its negotiations with

3

Settling Defendants, TED Plaintiffs considered the particular Defendants' conduct, the estimated amount of commerce affected by that conduct, and the value of the other settlement terms like cooperation being offered by the Settling Defendants, respectively.  (*See* Decl. of J. Manly Parks, attached hereto as Exhibit A).  The Settlements provide over $5 million in gross settlement funds for the TED Plaintiffs.  In the opinion of counsel for TED Plaintiffs, the Settlements provide an excellent result for the Settlement Classes and are fair, reasonable, and adequate.  (*Id.*)

> **B.**     **Cooperation and Other Terms.**

In addition to the cash payments, the Settling Defendants are required to provide TED Plaintiffs with various forms of cooperation that include: (1) the production of certain documents and data relevant to the ongoing claims against the non-settling Defendants; (2) interviews with representatives of the Settling Defendants; (3) the assistance in understanding certain data and other information produced to TED Plaintiffs; and (4) facilitating the use of such data and information at trial.  Those terms were set out in detail in the preliminary approval motions and the agreements between the parties (the "Settlement Agreements").

## II.     THE NOTICE PLAN WAS CARRIED OUT AND PROVIDED ADEQUATE NOTICE OF THE SETTLEMENTS.

The Settlements provide cash benefits to automobile dealerships that purchased certain parts and/or new vehicles containing those parts in jurisdictions that the TED Plaintiffs contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin (the "Included States").

With the assistance of its claims administrator, RG/2 Claims Administration LLC ("RG/2"), TED Plaintiffs' notice plan included direct postal mail and email notice to approximately 50,195 executives representing known Truck and Equipment Dealership addresses in the Included States.  (*See* Decl. of Tina Chiango, attached hereto as Exhibit B)  A summary notice was also published in:  (1) one insertion in *The Wall Street Journal*; (2) one insertion in *Automotive News*; and (3) one insertion in *World Truck Magazine*.  (*Id.*).  Banner Ads linking to the settlement website, www.TruckDealerSettlement.com, were included in the National Trailer Dealers Association E-newsletter and the American Truck Dealers Insider E-newsletter and earned media efforts through a national press release.  (*Id.*)

## III.    THE REACTION OF SETTLEMENT CLASS MEMBERS WAS POSITIVE.

The reaction of Truck and Equipment Dealers to these Settlements was positive.  There were no objections to any of the Settlement Classes. (*Id.*)  No class member has objected to the terms of the settlements, the notice plan, the requested attorneys' fees, cost reimbursement, or service awards. (*Id.*)  No class member requested an opportunity to be heard at the final fairness hearing. (*Id.*)  Of the approximately 50,195 recipients of the direct mail and email notices, no dealerships elected to opt-out.  (*Id.*; Parks Decl.)

### LEGAL STANDARD

The U.S. Court of Appeals for the Sixth Circuit and the U.S. District Court for the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08- MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions).

DM1\7333696.2

To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

The court considers whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14-15.

The court has broad discretion when approving a class action settlement. *UAW*, 497 F.3d at 636; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel as to the merits of an arm's length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length

negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted); *see also In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003).

Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not "substitute his or her judgment for that of the litigants and their counsel," *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006), or "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). Because of the uncertainties and risks inherent in any litigation, courts take a common sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick*, 2010 WL 4136958, at *15 (citation omitted). The court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

## ARGUMENT

**I.     THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE GIVEN FINAL APPROVAL.**

The Settlements before the Court meet the criteria required for final approval under Fed. R. Civ. P. 23. They provide meaningful benefits and were reached after negotiations between experienced counsel who were armed with sufficient background about the merits and defenses to the claims asserted. The settlements reflect a reasonable compromise in light of the liability,

7

damages, and procedural uncertainties facing both the TED Plaintiffs and the Settling Defendants.

Courts in the Sixth Circuit consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522. No single factor is determinative, and the Court may weigh each factor based on the circumstances of the case. *Int'l Union*, 2006 WL 1984363, at *21. The Court may "choose to consider only those factors that are relevant to the settlement at hand." *Id.* at *22; *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (holding that a district court enjoys wide discretion in assessing the weight and applicability of factors).

### A.     The Likelihood of the TED Plaintiffs' Success on the Merits Weighed Against the Relief Offered in the Settlements Supports Approval.

The Court assesses class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); Int'l Union, 2006 WL 1984363, at *21. The fairness of such a settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better

8

served if the litigation is resolved by settlement rather than pursued.  *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595).

The TED Plaintiffs believe they will prevail in these cases.  But they also recognize that success is not guaranteed in any complex litigation.  Although there were illegal conspiracies to coordinate bidding and other activities on component parts, the Settling Defendants have vigorously defended these cases.  Some Defendants have claimed that the TED Plaintiffs cannot prove that the bid rigging and price-fixing caused them an antitrust injury.  Other Defendants have previewed arguments about class certification, which they contend should not be granted in these cases.  The Settlements reflect both the strengths of the TED Plaintiffs' claims and the risk that the Settling Defendants may prevail on some of their arguments.

The Settling Defendants are represented by experienced and competent counsel and were prepared to defend these cases through trial.  While there is risk in any litigation, class actions are inherently high-stakes and high-risk.  TED Plaintiffs remain optimistic about the outcome of these cases, but must acknowledge that the settling Defendants could prevail on certain legal or factual arguments and by doing so, could reduce or eliminate potential recoveries TED Plaintiffs. The certainty and substantial benefits provided by the Settlements support a finding that they were reasonable and adequate.

Interim Class Counsel for TED Plaintiffs believe that the Settlements represent an excellent recovery for Truck and Equipment Dealerships.  Weighing the benefits of the Settlements against the risks of continued litigation tilts the scale heavily toward final approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

DM1\7333696.2

**B.      The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.**

"Settlement should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics*, 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with class actions, which are "inherently complex."); *Cardizem*, 218 F.R.D. at 533 ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex . . . .").

The Court has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish. The fact that TED Plaintiffs achieved substantial recoveries, which eliminate risk while ensuring substantial payments, supports final approval of the Settlements.

**C.      The Judgment of Experienced Counsel Who Have Evaluated the Strength of the Claims, Defenses, and Risks Supports Approval.**

The Settlements were reached by experienced counsel after arm's-length negotiations and are therefore provided deference. *Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate . . . .") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498

(E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

Interim Class Counsel for TED Plaintiffs are experienced in handling class action antitrust and other complex litigation. They have represented the interests of TED Plaintiffs from the inception of this litigation and negotiated the Settlements at arm's length with well-respected and experienced counsel for the Settling Defendants. Interim Class Counsel believe that the Settlements each provide an excellent result in light of the circumstances of each Settling Defendant's conduct and potential liability. (Parks Decl.)

Discovery in the cases involved in the Settlements varied, but in each case counsel for TED Plaintiffs was armed with important information about the conspiracies through review of documents produced to the Department of Justice, proffers of information by cooperating Defendants, and/or discovery from this litigation. The amount of discovery completed is a factor to be considered in the settlement approval process, but there is no baseline required to satisfy this factor. *Packaged Ice*, 2010 WL 3070161, at *5-6. The "question is whether the parties had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

The discovery and available information allowed Interim Class Counsel for the TED Plaintiffs to evaluate the strengths and weaknesses of the claims and defenses and to evaluate the

benefits of the Settlements.  Interim Class Counsel for TED Plaintiffs believe that the

Settlements are fair, reasonable, and in the best interests of Truck and Equipment Dealerships

who purchased new vehicles containing the parts at issue in the Settlements. (Parks Decl.)  The

opinion of counsel supports final approval of the Settlements.

> **D.    Class Member Reaction.**

There were no objections to any of the settlements. This is remarkable because there are

often at least a few objections to class settlements.  "A certain number of opt-outs and objections

are to be expected in a class action. If only a small number are received, that fact can be viewed

as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527. This reaction from

the members of the settlement classes strongly supports the adequacy of the settlements.

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by

about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. Western Union

Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large

number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class

settlement despite objections from more than 10% of class).  Notice of these settlements was sent

by direct mail and email to 50,195 executives representing known Truck and Equipment

Dealerships in the Included States. (Chiango Decl.)  The fact that no dealership opted-out

strongly supports the adequacy of the Settlements.

> **E.    The Public Interest Supports Granting Final Approval to the Settlements.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and

class action suits because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at

1205); *see also Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.  In

light of the conduct at issue and guilty pleas related to the claims here, there is no countervailing

12

public interest that provides a reason to disapprove the Settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports final approval.

### F.      The Settlements Are Not the Product of Collusion.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Int'l Union*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19-20. The Settlements here were reached after adversarial litigation and often contentious discovery. The negotiations leading to the Settlements were entirely arms' length and often took many months of settlement proposal exchanges. The Settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

## II.      NOTICE OF THE SETTLEMENTS WAS PROPER UNDER RULE 23 AND MET DUE PROCESS REQUIREMENTS.

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the

action, and affording them the opportunity to opt out or object.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable.  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL").  The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).  Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g., Eisen*, 417 U.S. at 175-76; MANUAL, § 21.311, at 292.  If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the Due Process clause and Fed. R. Civ. P. 23.  *Mullane*, 339 U.S. at 317-18; *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

No member of the Settlement Class objected to or criticized the notice program. (Chiango Decl.)  The program was primarily a direct mail program that targeted class members and was supplemented by published notice in industry-specific publications.  The notice program easily

14

satisfied the requirements of Rule 23 and due process and is consistent with notice programs previously approved by the Court in this MDL Proceeding.  *See, e.g.*, No. 2:12-cv-00102, ECF No. 397 (Dec. 7, 2015); *see also Packaged Ice*, 2011 WL 717519, at *5; *Sheick*, 2010 WL 4136958 at *15.

## III.    CERTIFICATION OF SETTLEMENT CLASSES IS APPROPRIATE.

In its preliminary approval orders, the Court found that Rule 23 requirements were met and provisionally certified, for purposes of settlement only, Settlement Classes relating to the parties and parts covered by the Settlements.  It is well-established that a class may be certified for purposes of settlement.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Int'l Union*, 2006 WL 1984363, at *3, *18; *Cardizem*, 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia*, LLC, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).  The Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for settlement purposes.

### A.    The TED Settlement Classes Satisfy Rule 23(a).

The Truck and Equipment Dealer Settlement Classes Satisfy Rule 23(a).  Certification of a class requires meeting the requirements of Rule 23(a) and one subsection of Rule 23(b).  *See Automotive Parts Antitrust Litig.*, No. 2:12-cv-00102, ECF No. 397, at 11-12 (Dec. 7, 2015) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013)); *see also Griffin*, 2013 WL 6511860, at *5; *Int'l Union*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *5; Date, 2013 WL 3945981, at *3.

### 1.     The Settlement Classes Are Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement, and the most important factor is whether joinder of all the parties would be impracticable.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  Numerosity is determined by the number and geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

The notice for these Settlements was mailed to approximately 50,195 representatives of TED entities, geographically dispersed throughout the United States.  Joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.     Common Questions of Law and Fact Exist.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397; *accord Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).

"[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4

16

NEWBERG ON CLASS ACTIONS § 18.05-15 (3d ed. 1992)).  Whether the Settling Defendants entered into illegal agreements to rig bids and artificially fix prices of vehicle component parts presents questions common to all members of the Settlement Classes.  *Packaged Ice*, 2011 WL 717519 at *6 (holding that the commonality was satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").  "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484.

Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met for the Settlement Classes.

> **3.** **TED Plaintiffs' Claims Are Typical of Those of the Settlement Class.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members."  *Griffin*, 2013 WL 6511860, at *6 (quoting *Int'l Union*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.  "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"  *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).

The claims of the TED Plaintiffs arise from the same course of conduct as the claims of the members of the Settlement Classes.  Rule 23(a)(3)'s typicality requirement is satisfied for the Settlement Classes.

4.    **TED Plaintiffs and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members.**

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel."  *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).  These requirements are met here.

The interests of TED Plaintiffs are the same as those of other Settlement Class members. These Plaintiffs are indirect purchasers of the parts and new vehicles at issue in this litigation and they, like the other Settlement Class members, claim that they were injured as a result of the alleged conspiracies and seek to prove that the settling Defendants violated antitrust and consumer laws.  The named TED Plaintiffs have the same interests as those of the members of the Settlement Classes.  TED Plaintiffs have retained qualified and experienced counsel to pursue these cases.  Counsel for TED Plaintiffs have vigorously pursued this litigation and will continue to represent the interests of TED Plaintiffs in these and other vehicle parts cases. Adequate representation under Rule 23(a)(4) is therefore satisfied.

B.    **TED Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), plaintiffs must show that the class falls under at least one of the three subsections of Rule 23(b).  *See Automotive Parts Antitrust Litig.*, No. 2:12-cv-00102, ECF No. 397 (Dec. 7, 2015).  The Settlement Classes qualify under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Id.*

18

(quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)); *see also Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### 1.   Common Legal and Factual Questions Predominate.

The Rule 23(b)(3) requirement that common issues predominate insures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy presents a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation . . . will not vary among class members' . . . Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

Here, the same set of core operative facts and theory of liability apply in each of the Settlements. Whether the Settling Defendants entered into illegal agreements presents questions common to all Settlement Class. *See, e.g., Packaged Ice*, 2011 WL 717519, at *6. If TED Plaintiffs and the other Settlement Class members brought individual actions, they would each be required to prove the same claims in order to establish liability. For settlement purposes, common issues predominate.

19

**2.      Class Action Settlements Are Superior to Other Methods of Adjudication.**

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

This multi-district antitrust litigation has been centralized in this Court, and no member of a Settlement Class requested exclusion from the Settlements. Thus, consideration of factors (1) - (3) demonstrates the superiority of these Settlement Classes. The fourth Rule 23(b)(3) factor is not relevant in a settlement-only class because the potential difficulties in managing a trial of the case is extinguished by the settlement. *Cardizem*, 218 F.R.D. at 517.

In addition, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (ED. Wisc. 2000)). Certifying the Settlement Classes will conserve judicial and private resources and will provide a single outcome that is binding on all Settlement Class members. *Cardizem*, 200 F.R.D. at 351. The alternatives to these Settlements are a multiplicity of separate lawsuits or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive. *See In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). Hence, the certification of Settlement Classes is superior to the alternatives in this litigation.

20

## CONCLUSION

For the foregoing reasons, TED Plaintiffs respectfully request that the Court grant final approval of the Settlements and certify the Settlement Classes for purposes of settlement.


Respectfully submitted,

Dated:  November 10, 2016

/s/ J. Manly Parks
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Andrew R. Sperl (PA Bar #311467)
William Shotzbarger (PA Bar #320490)
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com
wshotzbarger@duanemorris.com

*Interim Class Counsel for Truck and
Equipment Dealer Plaintiffs*

DM1\7333696.2